IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RONALD E. GILLEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:13cv514-MHT |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the court on a motion by Ronald E. Gilley ("Gilley") to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.

**I.   INTRODUCTION**

On April 22, 2011, Gilley pled guilty under a plea agreement to one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; six counts of aiding and abetting federal programs bribery, in violation of 18 U.S.C. § 666(a)(2) & § 2; and four counts of aiding and abetting money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) & § 2.  After a sentencing hearing on July 16, 2012, the district court sentenced Gilley to 80 months in prison.[1]  Gilley took no direct appeal.

On July 19, 2013, Gilley filed this § 2255 motion asserting that his trial counsel rendered ineffective assistance at sentencing by failing to –

---

[1] Gilley's 80-month sentence comprised 60 months' imprisonment for the conspiracy count and 80 months' imprisonment for all other counts, all terms to run concurrently.

> (a)  challenge a bribery amount in excess of $2 million as a specific offense characteristic under the Sentencing Guidelines;
>
> (b)  call FBI Agent John H. McEachern III to testify on his behalf at sentencing; and
>
> (c)  argue he was entitled to credit for codefendant Terry Spicer's guilty plea.

Doc. No. 1 at 2-5.[2]

The Government responds that Gilley's ineffective-assistance claims are meritless and should be rejected as grounds for § 2255 relief.[3] Doc. No. 7. After consideration of the

---

[2] Unless otherwise indicated, document numbers ("Doc. No.") referred to in this Recommendation are those assigned by the Clerk in the instant civil action. References to exhibits ("Ex.") are to those filed by the Government with its response, Doc. No. 7. Page references, except to those in the Presentence Investigation Report ("PSI"), are to those assigned by CM/ECF.

[3] Originally, the Government also argued that Gilley's § 2255 motion was barred in its entirety because his plea agreement contained a waiver provision under which he waived his right to appeal or collaterally attack his conviction and sentence. Doc. No. 7 at 2-15. Later, however, the Government expressly waived its right to enforce this waiver provision. *See* Doc. No. 18 at 1. Accordingly, the court's Recommendation pretermits lengthy discussion of the parties' arguments regarding the validity and enforceability of the waiver provision. However, the court notes that part of Gilley's argument against enforcement of the waiver is that his trial counsel induced him to agree to the waiver by assuring him, incorrectly, that the district court would ultimately sentence him to probation or house arrest in light of his cooperation with the Government. Doc. No. 1 at 5-6; Doc. No. 1-1 at 2-3. While Gilley also suggests that his counsel's assurances in this regard influenced his decision to plead guilty, his § 2255 motion does not present an independent claim that his guilty plea itself was involuntary and unknowing or that his plea should be set aside because his counsel was ineffective for inducing him to plead guilty through false assurances regarding his ultimate sentence. *See* Doc. No. 1 at 6-7 (stating that Gilley "never would have entered the appeal waiver" if his counsel had not assured him that he would receive a sentence of house arrest or probation and that "[h]is appeal waiver was, therefore, neither knowingly nor voluntarily entered" and requesting as relief "that this Court vacate his sentence, and resentence him at a hearing in which he has the opportunity to (1) argue in favor of only a 16-level increase under § 2B1.1(b)(1)(I)...; (2) call FBI Agent John H.
(continued...)

parties' submissions and the full record, the court finds that the § 2255 motion should be denied without an evidentiary hearing. Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*.

## II.   DISCUSSION

### A.   General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for

---

[3](...continued)
McEachern to the stand to testify in support of his request for a downward departure and variance; and (3) argue that he should receive credit for the fact that his cooperation led to Terry Spicer's guilty plea."). In any event, as concerns Gilley's suggestion that his agreement to the waiver provision and his willingness to plead guilty were induced by his counsel's assurances that he would receive a sentence of house arrest or probation, the transcript of the change of plea hearing reflects, in pertinent part, that the court fully advised Gilley of the statutory penalties for his offenses, and Gilley affirmed that he understood these penalties (Ex. C at 16-17); that the court specifically reviewed the waiver provision with Gilley, and Gilley agreed that he was giving up the right to appeal and collaterally challenge his conviction and sentence (*id*. at 18-19); that Gilley acknowledged he had read and discussed the plea agreement with his counsel and that he understood the terms of the plea agreement (*id*. at 14); and that Gilley acknowledged no one had made any promises or assurances to him not contained in the plea agreement to get him to accept the plea agreement or to plead guilty (*id*. at 14-15). In addition, Gilley affirmed under oath that he understood the court had the authority to impose a sentence higher than he might anticipate, and that his sentence might be different than any estimate given to him by his attorney. *Id*. at 17-18. The written plea agreement signed by Gilley contained the same information and affirmations set forth during the change of plea colloquy. *See* Ex. A at 2-6, 12-13, 16-18. "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). "There is a strong presumption that the statements made during the [guilty plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Gilley's sworn statements that his guilty plea and acceptance of the plea agreement had not been induced by any promises or assurances outside the plea agreement and that he understood that the sentence imposed might be different from any estimate made by his attorney completely undermine his current assertion that his agreement to the waiver provision and his willingness to plead guilty were induced by his counsel's assurances that he would receive a sentence of house arrest or probation.

collateral attack on final judgments under 28 U.S.C. § 2255 are limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

### B. Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's

performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has

5

been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### 1. Failure to Challenge Bribery Amount in Excess of $2 Million

Gilley contends that his trial counsel, David J. Harrison, rendered ineffective assistance of counsel at his sentencing by failing to challenge a bribery amount in excess of $2 million as a specific offense characteristic under the Sentencing Guidelines. Doc. No. 1 at 2-3.

#### Factual Background for Claim

Gilley pled guilty to charges stemming from his involvement in a large-scale scheme during 2009 and 2010 to bribe public officials in Alabama to pass proposed pro-gambling legislation.[4] A defendant who, like Gilley, is convicted of conspiracy to defraud under 18 U.S.C. § 371 or bribery under 18 U.S.C. § 666(a)(2) may be sentenced according to U.S.S.G. § 2C1.1. This guidelines section includes a specific offense characteristic enhancement for the value of the bribe in question. *See* U.S.S.G. § 2C.1(b)(2). When the value of the bribe in question exceeds $5,000, § 2C1.1(b)(2) directs that the defendant's offense level shall be increased according to a table in U.S.S.G. § 2B1.1.[5] *Id*.

Here, consistent with a stipulation in the plea agreement, the Presentence Investigation Report ("PSI") found that the total dollar amount of the bribes Gilley offered to various

---

[4] *See* Presentence Investigation Report ("PSI") at 4-12, ¶¶ 1-12; *also* Ex. A (Plea Agreement); Case No. 2:10cr186-MHT, Doc. No. 986 (Factual Basis for Guilty Plea).

[5] This table otherwise pertains to the amount of loss involved in a conviction for, inter alia, fraud. *See generally* U.S.S.G. § 2B1.1(b)(1).

Alabama public officials was between $7 million and $20 million. *See* PSI at 31, ¶ 109; Ex. A (Plea Agreement) at 6. Under the table in § 2B1.1, when a defendant offers a bribe amount of more than $7 million but less than $20 million, his offense level is increased by 20. *See* U.S.S.G. § 2B1.1(K), (L). Accordingly, the PSI recommended a 20-level specific offense characteristic enhancement for Gilley under § 2B1.1. PSI at 31, ¶ 109.

At Gilley's sentencing, however, the district court stated that it believed the total bribe amount offered by Gilley was less than $7 million and asked for an explanation of how the amount in the PSI had been reached. Ex. G at 40-41, 59. Addressing this issue, counsel for the Government conceded that the factual allegations against Gilley specifically identified roughly only $3.7 million in bribes, but contended that the true amount of the bribes offered by Gilley totaled more than $7 million. *Id*. at 59. The district court made a factual finding that the attributable bribe amount regarding state senator Scott Beason, one of the Alabama public officials to whom Gilley offered bribes, was limited to $2 million, rather than the $5 million the Government maintained Gilley had offered Beason.[6] *Id*. at 59-62. The court then found that when the $2 million bribe offered to Beason was added to the other bribe amounts attributable to Gilley, the total bribe amount offered by Gilley was $4,725,000. *Id*. at 61-62. According to the table in § 2B1.1, this amount (more than $2.5 million but less than $7

---

[6] The Government derived the $5 million figure based on the fact that the bribe offered to Beason was $1 million a year "for the foreseeable future." Ex. G at 59. In the Government's view, "the foreseeable future" amounted to five years. The district court, however, found that "the foreseeable future" was limited to two years; thus, the court found that the total bribe amount offered to Beason was $2 million (2 x $1 million). *Id*. at 59-60.

7

million) resulted in an 18-level increase in Gilley's offense level, rather than the 20-level increase contemplated by the PSI based on the larger calculated bribe amount.[7] *See* U.S.S.G. § 2B1.1(J), (K).

## Analysis of Claim

Not satisfied, in hindsight, with the district court's ultimate finding that the total bribe amount he offered to Alabama public officials was $4,725,000 (and was therefore more than $2.5 million but less than $7 million), Gilley contends that his trial counsel Harrison should have pushed for a further reduction in the § 2B1.1 specific offense characteristic enhancement by arguing that his total bribe amount did not exceed $2 million, and instead

---

[7] Under U.S.S.G. 2C1.1(a)(2), Gilley's base offense level was 12. PSI at 31, ¶ 107. Pursuant to U.S.S.G. § 2C1.1(b)(1), his offense level was increased by 2 levels because his offense involved more than one bribe. *Id*., ¶ 108. His offense level was increased by 4 levels under U.S.S.G. § 2C1.1(b)(3), because the bribes were offered with the purpose of influencing an elected public official. *Id*., ¶ 110. Because, as stated above, the bribe amount offered by Gilley was ultimately found to be more than $2.5 million but less than $7 million, his offense level was increased by 18 levels under § 2B1.1. *See* U.S.S.G. § 2B1.1(J), (K). His offense level was increased by 4 levels under U.S.S.G. § 3B1.1(a) based on his role as an organizer or leader in an offense involving five or more participants. PSI at 31, ¶ 112. Before reductions, then, Gilley's adjusted subtotal offense level was 40 (12 + 2 + 4 + 18 + 4).

In accordance with the plea agreement, Gilley received a 3-level reduction for acceptance of responsibility and for timely notifying the Government of his intention to plead gulity. *See* U.S.S.G. § 3E1.1(a), (b); PSI at 32, ¶ 112. With this reduction, Gilley's total offense level was 37 (40 - 3). Ex. G at 89. The offense level of 37 combined with Gilley's criminal history category of I resulted in a guidelines sentencing range of 210 to 262 months. *Id*. at 61, 63, 89. In further accordance with the plea agreement and based on Gilley's "very significant cooperation," the Government recommended a 50% downward departure from the low end of the guidelines range, resulting in a recommended sentence of 105 months. *Id*. at 63-65. The district court granted the recommended downward departure and then granted an additional downward variance of 25 months. *Id*. at 89-90. Thus, the sentence ultimately imposed by the court was 80 months' imprisonment. *Id*. at 90.

was more than $1 million but less than $2.5 million, which would have resulted in a 16-level enhancement under § 2B1.1[8] rather than the 18-level enhancement the district court imposed under that guideline.[9]  Doc. No. 1 at 2-3.  Gilley asserts that "competent counsel would have challenged a finding of any bribery amount in connection with Senator Beason – or certainly any amount greater than $1 million" and that "[t]he arrangement with the Senator was never finalized, and he was never paid anything." *Id*. at 3.  In addition, he asserts that "the amount of bribes paid to other politicians was less than $1.5 million." *Id*.

First, without question, calculation of the specific offense characteristic enhancement under § 2B1.1 may be based on the value of the bribe that is offered and is not limited to payments actually made by the briber.  Thus, it is immaterial, for purposes of § 2B1.1, that Beason "was never paid anything" by Gilley.

The Guidelines do not indicate that a sentence should be less where a

---

[8] Section 2B1.1 provides for a 16-level enhancement where the bribe amount is more than $1 million but less than $2.5 million.  *See* U.S.S.G. § 2B1.1(I), (J).

[9] Gilley contends that the effect of a reduced § 2B1.1 enhancement, and the resulting reduction in his guidelines range, would have been amplified by the plea-agreement term calling for the Government to recommend a 50% downward departure from the low end of his calculated guidelines range.  Assuming that a 16-level § 2B1.1 enhancement was imposed in place of the 18-level enhancement, Gilley's total offense level would have been 35 – which when combined with his criminal history category of I would have resulted in a guidelines sentencing range of 168 to 210 months.  In arguing that his resulting sentence would ultimately have been lower than the 80-month sentence actually imposed, Gilley assumes both that the Government would have maintained its willingness to recommend a 50% downward departure in the face of an additional reduction of the § 2B1.1 enhancement and his calculated guidelines range (this, in the face of the significantly larger bribe amount he admitted to under his plea agreement) and that the district court would have granted a downward variance from any lower calculated guidelines sentence.

9

> defendant offers a bribe, but does not pay. Such a result would reward a criminal who offers a bribe, gets a benefit and then cheats the intended recipient of the bribe. The commentary to section 2C1.1, applicable to bribery of public officials, addresses this issue: "Offenses involving attempted bribery are frequently not completed because the victim reports the offense to authorities or is acting in an undercover capacity. Failure to complete the offense does not lessen the defendant's culpability...." For this reason, the court does not believe that the Sentencing Commission intended that a defendant who offers a bribe, but does not pay, should receive a lesser sentence than a defendant who actually pays a bribe. *Cf. United States v. Cohen*, 171 F.3d 796, 804 (3d Cir. 1999) (holding that the value of improper benefit to be conferred includes "any benefit that the briber expected to receive at the time he paid the bribe, even if he did not ultimately receive it."). In the same respect, the Commission surely did not intend that a defendant who offers a bribe but cheats the intended recipient by not paying, or paying less than the agreed upon bribe, should receive a lesser sentence.

*United States. v. McClatchey*, 160 F.Supp.2d 1254, 1261 (D. Kan. 2001).

Further, in light of the district court's full consideration of the issue and its specific finding at sentencing that the bribe amount Gilley offered to Beason was $2 million – comprising $1 million a year for two years – Gilley does not demonstrate a reasonable likelihood that his counsel would have prevailed if he had argued for a further reduction in the bribe amount attributable to him regarding Beason. The issue was considered by the district court, and Gilley does not show that the district court's finding was erroneous. Moreover, Gilley merely *asserts* that the bribe amount he paid to other public officials was less than $1.5 million. However, he offers no serious, specific challenge to the district court's finding that, when the $2 million bribe he offered to Beason was added to the other bribe amounts attributable to him, the total bribe amount was $4,725,000. Nor does he offer a serious, specific challenge to the findings in the PSI that, in addition to the bribe amount

10

he offered to Beason, he offered – *at the very least* – bribes in the following amounts to the following Alabama public officials: $200,000 to "Legislator 1," a member of the Alabama House of Representatives; $100,000 to Larry P. Means, a member of the Alabama Senate; $2 million to James E. Preuitt, a member of the Alabama Senate; $25,000 to Quinton T. Ross, Jr., a member of the Alabama Senate; and $400,000 to Harri Anne H. Smith, a member of the Alabama Senate. *See* PSI at 7-9, ¶¶ 3-8. These amounts were also referenced in counts of the indictment to which Gilley pled guilty. *See* Ex. B at 10-52. When totaled, these amounts, standing alone, exceed the $2.5 million threshold required for an 18-level enhancement under § 2B1.1. And when added to the bribe amount offered to Beason (even if, as urged by Gilley, that amount is deemed to be no more than $1 million), the total bribe amount is even further above the $2.5 million threshold.

     The court notes that Gilley's present challenge to the bribe amount attributed to him runs counter to the stipulations in his plea agreement and his admissions of conduct in pleading guilty. There can be but little doubt that the favorable terms of his plea agreement – and perhaps the fact that a plea offer was even made in his case – depended to some degree on his willingness to acknowledge the full extent of the bribes that he offered. Counsel Harrison may well have recognized that the plea agreement, the Government's willingness to recommend a sentence reduction for acceptance of responsibility and a 50% downward departure from the low end of the calculated guidelines range, and the district court's willingness to grant that departure and an additional 25-month downward variance depended

11

on Gilley's full acceptance of responsibility for his actions, his cooperation with the Government, and his expressions of remorse for his conduct. A further challenge to the bribe amount would conflict with the notion that Gilley was contrite and that he had owned up to the conduct for which he was responsible.

Under the circumstances – particularly where the record amply supports a finding that the bribe amount offered by Gilley exceeded the $2.5 million threshold for the 18-level enhancement – the court concludes that Gilley has not shown that Harrison's failure to seek a further reduction in the bribe amount for the § 2B1.1 specific offense characteristic was professionally unreasonable. Harrison could reasonably have concluded that pursuit of such a claim would prove fruitless, and even counterproductive. Gilley likewise fails to show that Harrison's conduct prejudiced him. That is, he fails to demonstrate a reasonable probability that, had Harrison argued for a further reduction in the attributed bribe amount, the district court would have agreed with such an argument and would then have imposed a lower sentence. *See Peoples v. Campbell*, 377 F.3d 1208, 1244 (11th Cir. 2004). In view of the record, Gilley's argument here amounts to little more than wishful thinking and speculation. Consequently, he is not entitled to relief based on this claim of ineffective assistance of counsel.

### 2. *Failure to Call Agent McEachern to Testify*

Gilley next contends that Harrison rendered ineffective assistance of counsel by failing to call FBI Agent John H. McEachern III to testify at his sentencing regarding his

substantial assistance to the Government. Doc. No. 1 at 3-5.

According to Gilley, Harrison informed him that McEachern had stated he would testify at Gilley's sentencing and would "tell the judge that the best gift the Government could give him [McEachern] for his retirement was probation for Ronnie Gilley" and that he would testify that "Mr. Gilley was the most honest witness that he had ever dealt with." Doc. No. 1 at 4; Doc. No. 1-1 at 3. Although Harrison initially told Gilley that he intended to call McEachern to testify, on the day of sentencing, Gilley says, Harrison told him "that the Government was not going to allow the agent to testify" and "refused to call the agent to the stand, despite [Gilley's] pleas." Doc. 1 at 4; Doc. No. 1-1 at 3.

McEachern was called to the stand by Gilley's codefendant Jarrod Massey and testified on Massey's behalf at sentencing.[10] Gilley observes that although the Government recommended that Massey receive a sentence of about a year more than Gilley, the district court imposed a sentence on Massey "of one year *less* than Mr. Gilley's."[11] Doc. No. 1 at 4. Gilley contends that McEachern's testimony must have made the difference in Massey's sentence and that, accordingly, Harrison's failure to call McEachern to testify on his behalf resulted in his receiving a sentence that was greater than the sentence the court would

---

[10] The gist of McEachern's testimony on Massey's behalf was that Massey was cooperative and forthcoming in proffer sessions with Government investigators and that he appeared to be truthful in such sessions and remorseful about his unlawful conduct. Ex. H at 13-18.

[11] The court imposed a sentence of 65 months' imprisonment against Massey. Ex. H at 51.

13

otherwise have imposed. *Id*.

In connection with this claim, Gilley presents an affidavit from McEachern in which McEachern states that if he had been called to testify on Gilley's behalf he would have testified that he met with Gilley on numerous occasions, spent hours talking with Gilley, and found Gilley to be cooperative, honest, and forthcoming. Doc. No. 13-24 at 2. However, McEachern denies telling Harrison anything to the effect of that he would testify that the Government would be giving him a "gift" if Gilley were to receive probation. *Id.*

Here, Harrison could reasonably have concluded that McEachern's testimony on Gilley's behalf at sentencing would be cumulative. As the Government correctly observes, "the Government had already agreed and allocuted at length regarding Gilley's substantial cooperation with the Government's investigation and prosecution." Doc. 7 at 21-22. At sentencing, counsel for the Government discussed Gilley's cooperation in arguing that Gilley should receive a 50% downward departure from the low end of his calculated guidelines range:

> I believe that's supported here by the cooperation that Mr. Gilley gave. He testified at two trials. He made himself regularly available to the government, traveling time and again from his home to Montgomery to meet with us and then back. He wasn't given mileage or reimbursed for that. He did that on his own. He took a significant amount of time to prepare for his testimony outside of our presence. We tasked him with listening to tapes and then coming back and explaining the context of the tapes to us, as well as highlighting for us any things that we might have overlooked. Mr. Gilley on occasion would, during debriefings with him, point us to other evidence that he believed existed, and that would allow the investigators to go find things. So it was very significant cooperation.

14

Ex. G at 65. In his own filings and arguments to the district court, Harrison consistently argued that Gilley had accepted responsibility for his actions, had fully cooperated with the Government, and felt remorse for his unlawful actions.[12]

> [A] court must not second-guess counsel's strategy. *Waters [v. Thomas]*, 46 F.3d [1506,] at 1518-19 [(11th Cir. 1995)] (en banc). By "strategy," we mean no more than this concept: trial counsel's course of conduct, that was neither directly prohibited by law nor directly required by law, for obtaining a favorable result for his client. For example, calling some witnesses and not others is "the epitome of a strategic decision." *Id*. at 1512 (en banc); *see also id.* at 1518-19 (en banc); *Felker v. Thomas*, 52 F.3d 907, 912 (11th Cir. 1995) (whether to pursue residual doubt or another defense is strategy left to counsel, which court must not second-guess); *Stanley v. Zant*, 697 F.2d 955, 964 (11th Cir. 1983) (stating that reliance on line of defense to exclusion of others is matter of strategy).

*Chandler*, 218 F.3d at 1314 n.14.

The decision by Harrison not to present testimony from McEachern falls within the wide range of reasonable professional assistance. Given that the extent of Gilley's cooperation with the Government was well established at his sentencing, it would not be

---

[12] Prior to sentencing, Harrison filed with the court a lengthy sentencing memorandum discussing Gilley's background, family circumstances, finances, and standing in the community. Ex. F. The sentencing memorandum also addressed the relevant sentencing factors under 18 U.S.C. § 3553(a), setting forth detailed arguments as to each factor. *Id*. Harrison requested that Gilley receive a sentence of three months as time served, followed by six months of home confinement, three years of supervised release, and community service. *Id*. at 57-58. At sentencing, Harrison presented testimony from five witnesses and from Gilley himself regarding Gilley's activities in the community and Gilley's remorse for his actions. *See, e.g.*, Ex. G at 12-57. Harrison also argued to the court that Gilley should receive a 70% to 80% downward departure based on his substantial assistance to the Government. *Id*. at 66-69. He further argued that sentencing Gilley to incarceration would result in substantial economic damage to the community. *Id*. at 69-73. He concluded by recommending that Gilley be sentenced to 52 weekends in jail with ankle monitoring during weekdays. *Id*. at 73-74.

professionally unreasonable for Harrison to believe that testimony from McEachern concerning Gilley's honesty and cooperation would have limited value in influencing the district court's sentencing determination. For much the same reason, Gilley cannot show that he was prejudiced by Harrison's actions. As noted, ample evidence and arguments were presented to the court regarding Gilley's cooperation with the Government. Gilley fails to show that McEachern's testimony would have added materially to the evidence so as to move the needle in his favor in the court's sentencing determination. Counsel's failure to present cumulative evidence is not ineffective assistance of counsel. *See, e.g., Brown v. United States*, 720 F.3d 1316, 1327 (11th Cir. 2013).

As to Gilley's contention that McEachern's testimony on behalf of his codefendant Massey made the difference in Massey's receiving a lesser sentence, it is purely a matter of speculation that McEachern's testimony was a deciding factor in Massey's sentence. Moreover, as the Government observes in addressing this claim, Massey and Gilley were not identically situated, and the district court's reasons for granting a variance in Massey's case differed from those in Gilley's case. Doc. No. 7 at 23-24. While the court agreed that Massey, like Gilley, had displayed contrition and would not recidivate, it also found that the "damage done to Mr. Massey's family" was particularly severe (for reasons that were discussed *in camera*). Ex. H at 51; *see* Ex. G at 89-90. The court did not indicate that it was imposing Massey's sentence based on testimony from McEachern.

For the reasons discussed above, the court finds Gilley has failed to show that

Harrison's representation in this regard fell below an objective standard of reasonableness or a reasonable probability that, but for Harrison's alleged errors, the district court would have imposed a lower sentence. *Campbell*, 377 F.3d at 1244. Therefore, Gilley is not entitled to relief based on this claim of ineffective assistance of counsel.

### 3. *Failure to Seek Credit for Codefendant Spicer's Guilty Plea*

Finally, Gilley contends that Harrison rendered ineffective assistance of counsel by failing to argue that he was entitled to receive credit for codefendant Terry Spicer's guilty plea. Doc. No. 1 at 5.

As noted above, Harrison argued at length regarding Gilley's cooperation with the Government, and the district relied on those arguments in lowering Gilley's sentence. It was the Government's position at sentencing that Massey, and not Gilley, deserved credit for Spicer's guilty plea. Ex. H at 47-48. Gilley points to no record evidence to support his claim that he is entitled to credit for Spicer's plea. Nor does he present any convincing argument why his claim for such credit would have been accepted by the district court. His inability to show a reasonable probability that the court would have lowered his sentence even further if it had been persuaded that he was responsible for Spicer's guilty plea precludes his receiving any relief on this claim of ineffective assistance of counsel. *Campbell*, 377 F.3d at 1244.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28

U.S.C. § 2255 motion filed by Gilley be DENIED with prejudice.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **July 30, 2015**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 16th day of July, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE